1    STEVE W. BERMAN (*pro hac vice*)
     steve@hbsslaw.com
2    HAGENS BERMAN SOBOL SHAPIRO LLP
     1918 Eighth Avenue, Suite 3300
3    Seattle, WA 98101
     Telephone:  (206) 623-7292
4    Facsimile:  (206) 623-0594

5    MARTIS ANN ALEX (SBN 77903)
     malex@labaton.com
6    DANIEL R. LEATHERS (*pro hac vice*)
     dleathers@labaton.com
7    BRIAN R. MORRISON (*pro hac vice*)
     bmorrison@labaton.com
8    LABATON SUCHAROW LLP
     140 Broadway
9    New York, NY 10005
     Telephone:  (212) 907-0700
10   Facsimile:  (212) 818-0477

11   *Attorneys for Plaintiffs*

12   [Additional Counsel on Signature Page]

13            **UNITED STATES DISTRICT COURT**

14            **CENTRAL DISTRICT OF CALIFORNIA**

15                 **WESTERN DIVISION**

| | |
|---|---|
| 16   BERNICE WIMLEY, OSCAR DE LEON, KEVIN SISTI, JR., and MARK PASTARNACK, on behalf of themselves and those similarly situated, | No. 5:15-cv-02434-AB-MRW |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANT FCA US LLC'S MOTION TO DISMISS** |
|            Plaintiffs, | Date:     June 27, 2016 |
|     v. | Time:     10:00 a.m. |
| | Place:    Courtroom 4 |
| FCA US LLC, | Judge:    Hon. André Birotte, Jr. |
|            Defendant. | |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.     BACKGROUND ..................................................................................... 3

III.    ARGUMENT ........................................................................................... 6

    A.    Legal Standard ............................................................................. 6

    B.    Plaintiffs Allege a Sufficient Injury-in-Fact to Confer Article III Standing ........................................................................................ 7

    C.    Dismissal of New York Plaintiff Pastarnack's Claims Is Not Warranted Under Rule 12(b)(2) Because the Court Can and Should Retain Pendent Personal Jurisdiction Over Such Claims ............. 9

    D.    Dismissal Is Not Warranted Under Rule 12(b)(6) ................................... 11

        1.    Plaintiffs adequately plead facts supporting reliance and causation. .................................................................................. 11

        2.    The Complaint complies with Rule 9(b). ..................................... 13

        3.    Plaintiffs sufficiently allege that FCA omitted material facts and breached its duty to disclose a safety defect. ................ 15

            a.    FCA has a duty to disclose the Defect because there are safety concerns associated with use of the Affected Vehicles. ................................................. 16

            b.    FCA has a duty to disclose the Defect based on its superior knowledge about the Defect and related safety issues. ................................................................. 17

    E.    Plaintiffs' Unjust Enrichment Claims Are Properly Pled in the Alternative ................................................................................ 19

    F.    Plaintiffs' Implied Warranty Claims Should Be Allowed to Proceed ........................................................................................ 21

    G.    Plaintiffs' Request for Injunctive Relief Is Not Barred by Preemption or Primary Jurisdiction ............................................. 22

IV.    CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
 368 F.3d 1174 (9th Cir. 2004) .............................................................. 9, 10

*In re Adobe Sys., Inc. Privacy Litig.*,
 66 F. Supp. 3d 1197 (N.D. Cal. 2014) ...................................................... 19

*Allen v. Similasan Corp.*,
 2013 WL 2120825 (S.D. Cal. May 14, 2013) ........................................... 10

*Apodaca v. Whirlpool Corp.*,
 2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) ............................................ 16

*Asghari v. Volkswagen Grp. of Am., Inc.*,
 42 F. Supp. 3d 1306 (C.D. Cal. 2013) ................................... 13, 14, 16, 18

*Astiana v. Hain Celestial Grp., Inc.*,
 783 F.3d 753 (9th Cir. 2015) ................................................... 20, 21, 25

*Birdsong v. Apple, Inc.*,
 590 F.3d 955 (9th Cir. 2009) ...................................................................... 7

*In re Bridgestone/Firestone, Inc., ATX, ATX II & Wilderness Tires Prods.
Liab. Litig.*,
 153 F. Supp. 2d 935 (S.D. Ind. 2001) ............................................... 24, 25

*Briehl v. General Motors Corp.*,
 172 F.3d 623 (8th Cir. 1999) ...................................................................... 9

*Cahen v. Toyota Motor Corp.*,
 2015 WL 7566806 (N.D. Cal. Nov. 25, 2015) ......................................... 10

*CE Distrib., LLC v. New Sensor Corp.*,
 380 F.3d 1107 (9th Cir. 2004) ............................................................. 9, 10

*Chamberlan v. Ford Motor Co.*,
 314 F. Supp. 2d 953 (N.D. Cal. 2004) .................................. 3, 23, 24, 25

*Clapper v. Amnesty Int'l USA*,
 133 S. Ct. 1138 (2013) ................................................................................ 8

*Cohen v. BMW Investments L.P.*,
   2015 WL 6619958 (S.D.N.Y. Oct. 30, 2015) ........................................ 21

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) ................................................................. 9

*Cox House Moving, Inc. v. Ford Motor Co.*,
   2006 WL 2303182 (D.S.C. 2006) ......................................................... 24

*Cuviello v. City & Cty. of San Francisco*,
   940 F. Supp. 2d 1071 (N.D. Cal. 2013) ................................................. 6

*Daugherty v. American Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006) .............................................................. 15

*Decker v. Mazda Motor of Am., Inc.*,
   2011 WL 5101705 (C.D. Cal. Oct. 24, 2011) ...................................... 16

*Derienzo v. Trek Bicycle Corp.*,
   376 F. Supp. 2d 537 (S.D.N.Y. 2005) ................................................. 22

*Doll v. Ford Motor Co.*,
   814 F. Supp. 2d 526 (D. Md. 2011) ...................................................... 21

*Ehrlich v. BMW of N. Am., LLC*,
   801 F. Supp. 2d 908 (C.D. Cal. 2010) ................................................. 16

*Elias v. Hewlett-Packard Co.*,
   2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ..................................... 17, 18

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ................................................................ 6

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ......................................... *passim*

*Goldberg v. Kollsman Instrument Corp.*,
   12 N.Y.2d 432 (1963) ...................................................................... 21, 22

*Gray v. Toyota Motor Sales, U.S.A.*,
   2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ........................................ 19

*Guido v. L'Oreal, USA, Inc.*,
   2013 WL 454861 (C.D. Cal. Feb. 6, 2013) .......................................... 25

*Hernandez v. Lopez,*
   180 Cal. App. 4th 932 (2009) ................................................................. 20

*Herremans v. BMW of N. Am., LLC,*
   2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ...................................... 12, 14

*Hinojos v. Kohl's Corp.,*
   718 F.3d 1098 (9th Cir. 2013) ........................................................ 11, 12

*Hofmann v. Fifth Generation, Inc.,*
   2015 WL 5440330 (S.D. Cal. Mar. 18, 2015) ........................................ 19

*Hubbard v. General Motors Corp.,*
   1996 WL 274018 (S.D.N.Y. May 22, 1996) .......................................... 22

*Hughes v. Ester C Co.,*
   930 F. Supp. 2d 439 (E.D.N.Y. 2013) .................................................. 21

*Johnson v. Harley-Davidson Motor Co. Grp., LLC,*
   285 F.R.D. 573 (E.D. Cal. 2012) ......................................................... 17

*Kearney v. Hyundai Motor Am.,*
   2010 WL 8251077 (C.D. Cal. Dec. 17, 2010) ............................. 12, 16, 17

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009) ............................................................ 14

*Keegan v. Am. Honda Motor Co., Inc.,*
   284 F.R.D. 504 (C.D. Cal. 2012) ................................................. *passim*

*Kelly v. Echols,*
   2008 WL 4163221 (E.D. Cal. Sept. 4, 2008) ......................................... 13

*Klein v. National R.R. Passenger Corp.,*
   1988 WL 108481 (S.D.N.Y. Oct. 7, 1988) ............................................ 13

*Lee v. Toyota Motor Sales, U.S.A., Inc.,*
   992 F. Supp. 2d 962 (C.D. Cal. 2014) .................................................. 8, 9

*Lilly v. Ford Motor Co.,*
   2002 WL 84603 (N.D. Ill. Jan. 22, 2002) ........................................ 24, 25

*Litman, Asche & Gioiella, LLP v. Chubb Custom Ins. Co.,*
   373 F. Supp. 2d 314 (S.D.N.Y. 2005) .................................................. 20

*Marsikian v. Mercedes Benz USA, LLC*,
   2009 WL 8379784 (C.D. Cal. May 4, 2009) .................................................... 16, 17

*McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*,
   339 F.3d 1087 (9th Cir. 2003) .................................................................................. 21

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) ........................................................... 17, 18, 22

*Peel v. BrooksAmerica Mortg. Corp.*,
   788 F. Supp. 2d 1149 (C.D. Cal. 2011) .................................................................... 13

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) .................................................................................... 11

*Smith v. Ford Motor Co.*,
   462 F. App'x 660 (9th Cir. 2011) .............................................................................. 21

*In re Sony PS3 "Other OS" Litig.*,
   551 F. App'x 916 (9th Cir. 2014) .............................................................................. 20

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .................................................................................... 6

*State v. Gen. Motors Corp.*,
   466 N.Y.S.2d 124 (Sup. Ct. 1983) ............................................................................ 15

*Summers v. Earth Island Institute*,
   555 U.S. 488 (2009) .................................................................................................... 7

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) .............................................................................. 11

*In re Toyota Motor Corp.*,
   790 F. Supp. 2d 1152 (C.D. Cal. 2011) ........................................................... 7, 8, 12

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) .............................................................. passim

*Trazo v. Nestlé USA, Inc.*,
   113 F. Supp. 3d 1047 (N.D. Cal. 2015) .................................................................... 20

*In re Trilegiant Corp., Inc.*,
   11 F. Supp. 3d 82 (D. Conn. 2014) ........................................................................... 20

1
2

*Vicuña v. Alexia Foods, Inc.*,
    2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) .......................................................... 20

3
4

*Waldman v. New Chapter, Inc.*,
    714 F. Supp. 2d 398 (E.D.N.Y. 2010) .................................................................. 21

5
6

*Willis v. Buffalo Pumps, Inc.*,
    34 F. Supp. 3d 1117 (S.D. Cal. 2014) .................................................................. 16

7
8

*Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*,
    135 F.3d 658 (9th Cir. 1998) .............................................................................. 6

**Other Authorities**

9
10

76 Fed. Reg. 77183-84, 77195 (Dec. 12, 2011) ........................................................ 23

11

76 Fed. Reg. at 77197 .................................................................................................. 25

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

### I.   INTRODUCTION

2

In the past several years alone, at least fourteen people have died and many

3

more have sustained life-threatening injuries caused by deadly carbon monoxide

4

emissions from their cars that were equipped with Keyless Fobs.  Because those

5

vehicles were not equipped with an automatic engine shutoff to ensure that the

6

vehicle's engine did not continue to emit deadly carbon monoxide long after the car

7

was parked ("Auto-Off"), innocent drivers, families, and bystanders suffered from

8

carbon monoxide poisoning.  Not one of those deaths or injuries would have occurred

9

if the cars had been equipped with Auto-Off.

10

Unlike with traditional physical keys, where a driver is assured that the engine

11

must be off if she parks the car and walks away with the key in hand, Keyless Fobs

12

have nothing to do with shutting off the engine.  Consequently, unlike with traditional

13

keys, drivers can and do park their cars and walk away with the Keyless Fob in hand,

14

not realizing until they return to their cars that the engine is still running and emitting

15

deadly carbon monoxide.

16

As detailed in Plaintiffs' Class Action Complaint ("Complaint"), Defendant

17

FCA US LLC ("FCA") knew about the serious safety risks associated with *a Keyless*

18

*Fob system designed without Auto-Off* (the "Defect"), and knew that people were

19

being killed and injured as a result.  But FCA chose not to fix the Defect or to disclose

20

its existence to consumers.  Plaintiffs allege that they purchased or leased Keyless Fob

21

vehicles from FCA that they otherwise would not have purchased or leased, or paid

22

more than they otherwise would have paid, if FCA had disclosed the Defect.  Plaintiffs

23

bring various state law claims seeking economic damages for their overpayments, and

24

injunctive relief to stop FCA's ongoing deceptive marketing, to remedy the dangerous

25

Defect, and to notify class members about the defective nature of their vehicles.

26

Now, in its Motion to Dismiss ("MTD"), FCA argues that Plaintiffs lack Article

27

III standing and the Court lacks personal jurisdiction over out-of-state Plaintiffs.

28

Furthermore, FCA argues that Plaintiffs do not allege reliance/causation of harm or a

duty to disclose the Defect.  Further still, FCA maintains that Plaintiffs fail to state claims for unjust enrichment or breach of the implied warranty, and that Plaintiffs' request for injunctive relief is barred by preemption and primary jurisdiction.  Simply stated, FCA's motion fails as a matter of law.

*First*, FCA's argument that Plaintiffs lack standing to assert any claims is without merit.  Plaintiffs allege that they already suffered economic loss and therefore they have Article III standing.  FCA's reliance on cases in which neither the plaintiffs nor other persons experienced the hypothetical defects is therefore unavailing.

*Second*, the Court can and should maintain pendant personal jurisdiction over claims asserted by out-of-state Plaintiff Mark Pastarnack.  Because he alleges substantially similar facts and legal theories as do the California Plaintiffs, and because hearing all of Plaintiffs' claims together advances the interests of judicial economy, fairness, and convenience, the Court should retain pendant jurisdiction over Plaintiff Pastarnack's claims.

*Third*, Plaintiffs allege that they would not have purchased or leased the vehicles in question, or paid as much for them, had Plaintiffs known about the material safety Defect.  This readily satisfies any reliance/causation requirement.  Moreover, Plaintiffs adequately allege that FCA had a duty to disclose the Defect.  The duty to disclose exists here because the lack of Auto-Off poses a genuine safety risk and because FCA had exclusive or superior knowledge of the Defect.

*Fourth*, Plaintiffs' implied warranty claims contain sufficient factual allegations to plausibly support entitlement to relief.  At this stage of the litigation, Plaintiffs' allegations that the vehicles suffer from a serious safety defect are enough to support the claim that the vehicles are not merchantable.  And, Plaintiffs properly plead unjust enrichment claims in the alternative to other causes of action.  The Ninth Circuit recently confirmed that unjust enrichment claims should not be dismissed at the pleading stage merely because there eventually may be some adequate remedy at law.

*Finally*, Plaintiffs' request for injunctive relief is not barred by preemption or primary jurisdiction.  Tellingly, the arguments on preemption and primary jurisdiction that FCA makes here were expressly rejected by the courts in *Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953 (N.D. Cal. 2004), and in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.* ("*Unintended Acceleration MDL*"), 754 F. Supp. 2d 1145 (C.D. Cal. 2010) (a noteworthy vehicle defect class action from this district).  FCA does not even mention those cases in its brief, and regardless, it fails to meet its burden of establishing an "actual" conflict between the requested relief and the National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act"), particularly given the presumption against preemption in motor vehicle safety cases.  Additionally, FCA's primary jurisdiction argument fails because Plaintiffs' claims are within "the conventional competence of the courts" and do not require any specialized consideration by the National Highway Transportation Safety Administration ("NHTSA").

For the reasons discussed herein, the Court should deny FCA's motion.

## II.     BACKGROUND

Keyless Fobs are marketed as the ultimate driving convenience.  Drivers can keep the Keyless Fobs in their pockets or bags and can start the car by pressing a button on the dashboard without having to fumble for a traditional key.  *See* ¶ 2.[1]

However, this convenience has resulted in deadly consequences.  With traditional physical keys, once a driver removed the key from the ignition switch, the engine could no longer operate.  ¶ 3.  Drivers knew that if they removed the key from the vehicle, the engine was off.  But Keyless Fobs operate very differently.  Unlike with traditional keys, the Fob has nothing to do with turning off the engine.  ¶ 6.  Engines no longer turn off simply because the car is parked and the Fob is removed from the vehicle.  *Id.*  For Plaintiffs' vehicles, as with other vehicles listed in Exhibit 1

---

[1] Except where otherwise noted, references to "¶__" are to paragraphs in the Complaint (Dkt. No. 1).

to the Complaint (the "Affected Vehicles"), the driver can stop the vehicle, put it in park, and exit with the Keyless Fob, but the engine can continue to run until the gas tank is empty, no matter how far away the driver goes from the car, and no matter how long the engine is running.  *Id.*

Keyless Fobs are often offered as part of an "upgrade" or "technology" package that costs consumers additional money.  ¶ 8.  In vehicles that come with a Keyless Fob as standard equipment, the cost of the hardware and technology is built into the vehicle price.  In either case, Plaintiffs and other consumers pay additional money for the Keyless Fobs.  *Id.*  But this added convenience comes with a severe safety risk because FCA has failed to institute Auto-Off on the Affected Vehicles.  ¶ 12.

Tragically, as detailed in the Complaint, many drivers have been exposed to deadly levels of carbon monoxide that seeped into their homes after the car was parked in the garage and, unbeknownst to the driver, the engine continued to run.  In just the past six months:

A young mother parked her car in the garage and was awakened in the middle of the night by her thirteen-month-old son screaming.  She and her son were saved by emergency medical treatment, but both would have died from carbon monoxide poisoning had they stayed in their house just twenty minutes longer.  ¶ 18.

A father in Issaquah, Washington, parked the family minivan in the garage, and the family of six was later rushed to the hospital for emergency treatment for carbon monoxide poisoning.  The seventeen-month-old baby required three days of intensive treatment in a hyperbaric chamber, and three of the responding firefighters also required medical attention.  ¶ 18.

Earlier, a college professor in Queens, New York, parked her car in her garage and woke up the next morning with permanent brain damage caused by carbon monoxide poisoning.  Her partner was dead.  ¶ 21.

These and many other tragedies were caused by carbon monoxide poisoning from cars equipped with a Keyless Fob system that lacks Auto-Off.  Unfortunately,

they are not isolated stories.  The Complaint details *at least* fourteen documented deaths and many more serious injuries – all from carbon monoxide poisoning, and all of which would have been prevented if the vehicles had Auto-Off.  ¶ 17.[2]

Since the time that FCA first marketed the Affected Vehicles, and at the time Plaintiffs purchased or leased the Affected Vehicles, the Keyless Fob system lacked Auto-Off and posed a serious risk of carbon monoxide poisoning.  ¶ 182.  At the same time, FCA was in a superior position to know about the lack of Auto-Off in its Affected Vehicles and the unreasonable safety hazard created by the lack of Auto-Off.  ¶¶ 181-82.  As alleged in the Complaint, FCA's superior knowledge of the Defect arises through a variety of sources that include select news reports, recalls, patent applications, personal injury lawsuit filings, NHTSA complaints, non-binding NHTSA proposals, and FCA's partial implementation of Auto-Off.  ¶¶ 132-79.  In fact, FCA installed an automatic shut-off system for many of its remote-start vehicles to shut off the engine if the vehicle is left running in pre-start mode in order to limit deadly carbon monoxide emissions.  ¶¶ 173-79.[3]  FCA failed to disclose the lack of Auto-Off and related safety risk to consumers, inducing consumers to purchase or lease the Affected Vehicles and to pay a premium price in the process.  ¶ 182.

Plaintiffs purchased or leased the FCA Affected Vehicles equipped with Keyless Fobs, not knowing that their vehicles lacked Auto-Off.[4]  ¶¶ 41, 56, 86.  Prior to purchasing or leasing the vehicles, they reviewed FCA pre-sale materials, but none of those pre-sale materials warned them that their vehicles lacked Auto-Off or that the

---

[2] Plaintiffs' counsel have learned of at least five more deaths since filing the Complaint in November 2015, bringing the total number of avoidable deaths to nineteen.  If the Court requests or requires further allegations about the safety hazard posed by the Defect, Plaintiffs' counsel could and would detail the circumstances of these additional deaths.

[3] In a remote-start vehicle, a driver can use an electronic fob to start the engine remotely to warm or cool the vehicle before entering.

[4] Plaintiff Kevin Sisti, Jr. has withdrawn from the litigation and is no longer a putative class representative in this litigation.  *See* Dkt. No. 31.  Accordingly, Plaintiffs are no longer pursuing Connecticut-based claims in this case.

1   lack of Auto-Off poses a serious safety risk.  ¶¶ 47, 61, 92.  While Plaintiffs have been

2   fortunate enough not to suffer carbon monoxide poisoning, they have experienced the

3   Defect – they each have parked their vehicles, removed the Keyless Fob, walked

4   away, and later discovered the vehicles' engines were still running.  ¶¶ 49, 63, 94.

5   Plaintiffs would not have purchased or leased the vehicles, or paid as much for them,

6   had they known about the lack of Auto-Off and related safety risks.  ¶¶ 54, 99.

### III.    ARGUMENT

**A.    Legal Standard**

9       A motion to dismiss challenges the legal sufficiency of the claims alleged.

10   While the complaint must plead enough facts to render the claims plausible on their

11   face, a claim has plausibility "when the plaintiff pleads factual content that allows the

12   court to draw the reasonable inference that the defendant is liable for the misconduct

13   alleged." *Cuviello v. City & Cty. of San Francisco*, 940 F. Supp. 2d 1071, 1079 (N.D.

14   Cal. 2013).[5]  "On a motion to dismiss, all well-pleaded allegations of material fact are

15   taken as true and construed in a light most favorable to the non-moving party." *Wyler*

16   *Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

17       Additionally, under Federal Rule of Civil Procedure 9(b), the fraudulent

18   omission claims asserted by Plaintiffs "can succeed without the same level of

19   specificity required by a normal fraud claim." *Unintended Acceleration MDL*, 754 F.

20   Supp. 2d at 1189 (Rule 9(b) requirements relaxed for fraudulent omission claims

21   "because requiring a plaintiff to identify (or suffer dismissal) the precise time, place,

22   and content of an event that (by definition) did not occur would effectively gut state

23   laws prohibiting fraud-by-omission").

24       Plaintiffs have alleged sufficient factual allegations that "plausibly suggest an

25   entitlement to relief." *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).[6]

26

27       [5] Unless otherwise indicated, all internal quotation marks and citations are omitted.

28       [6] Moreover, dismissal "without leave to amend is not appropriate unless it is
     clear … that the complaint could not be saved by amendment." *Eminence Capital,*

1

**B.      Plaintiffs Allege a Sufficient Injury-in-Fact to Confer Article III Standing**

2

FCA's argument, that Plaintiffs have not sufficiently alleged injury-in-fact to

3

confer Article III standing, is without merit, particularly at this stage of the litigation

4

where "general factual allegations of injury resulting from the defendant's conduct

5

may suffice." *See Unintended Acceleration MDL*, 754 F. Supp. 2d at 1160.

6

*First*, Plaintiffs allege that they have suffered *actual* economic losses.  As FCA

7

concedes, Plaintiffs allege that they overpaid for the vehicles because the price of the

8

defective Fob was built into the vehicles' prices.  *See* ¶ 39.  The Complaint is also

9

replete with allegations that the Defect diminishes the value of Plaintiffs' vehicles.

10

*See* ¶¶ 39, 164; *see also In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1163 (C.D.

11

Cal. 2011) ("A vehicle with a defect is worth less than one without a defect.").

12

Because Plaintiffs allege that they already have suffered economic losses, they

13

necessarily have Article III standing.[7]  The Court in the *Unintended Acceleration MDL*

14

expressly held that "overpayment, loss in value, or loss of usefulness is sufficient to

15

confer standing,"  754 F. Supp. 2d at 1162.

16

FCA's reliance on *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), does

17

nothing to advance its argument.  In *Birdsong*, the plaintiffs alleged that Apple iPods

18

were defective because they were capable of playing at 115 decibels and consumers

19

may listen at unsafe levels, causing hearing loss.  *Id.* at 961.  But the plaintiffs did not

20

allege that they or anyone else had ever experienced the defect.  *Id.*  The court there

21

found that the alleged diminution in value did not constitute injury because it rested on

22

a hypothetical risk of hearing loss that had never occurred.  *Id.*  Unlike in *Birdsong*,

23

24

*LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also* Fed. R. Civ. P.
15(a)(2).  Plaintiffs respectfully request leave to amend if necessary.

25

26

[7] FCA's footnoted citation to *Summers v. Earth Island Institute*, 555 U.S. 488, 499-
500 (2009), is off point.  In *Summers*, environmental organizations challenged federal
regulations concerning the sale of timer on federal lands, but the Court found that the
organizations lacked standing because none of the organizations' members had
suffered actual injury or had any concrete plans to visit the federal lands subject to the
regulations.  *Id.* at 496-97.

27

28

1  Plaintiffs here have actually experienced manifestations of the dangerous Defect that

2  has resulted in at least fourteen avoidable deaths and many more serious injuries.

3      This case is also quite different from *Clapper v. Amnesty Int'l USA*, 133 S. Ct.

4  1138, 1148 (2013), another case relied upon by FCA, where the plaintiffs did not

5  allege they had actually been injured or that they had experienced the conduct

6  complained of.  The plaintiffs in *Clapper* pled only that they *suspected* that

7  surveillance interceptions of human rights organizations *might* have occurred, that

8  their client communications *may* be intercepted in the future, and that they *may* then

9  have to incur expenses to protect confidentiality.  *Id.*

10      Plaintiffs adequately plead a safety defect that has resulted in at least fourteen

11 deaths and many more serious injuries.  FCA ignores guiding case law from this Court

12 holding that once plaintiffs sufficiently plead a safety defect, "the economic losses

13 resulting from the defect are readily established:  defective cars are simply not worth

14 as much."  *In re Toyota*, 790 F. Supp. 2d at 1163.[8]

15      FCA's remaining argument that Plaintiffs' allegations of harm are "conclusory"

16 fares no better,[9] particularly because FCA incorrectly relies on two cases where the

17 plaintiffs never actually experienced a manifestation of the claimed defect.  In *Lee v.*

18 *Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962 (C.D. Cal. 2014), plaintiffs

19 brought various consumer claims against Toyota concerning an automatic pre-

20 collision braking function, but did not allege that they or any other consumers had ever

---

21  [8] FCA goes to great lengths to describe how "speculative" it would be for a driver

22 to suffer from carbon monoxide poisoning from a Keyless Fob-equipped vehicle.
MTD at 8.  However, boiled down to its most basic premise, a driver may suffer

23 carbon monoxide poisoning merely by parking the vehicle in an enclosed garage,
removing the Keyless Fob – believing the vehicle to be turned off – and entering the

24 attached home.  This scenario is far from "speculative"; indeed, millions of drivers
park their vehicles in attached garages every day when they visit family or arrive

25 home from daily activities.

26  [9] In a footnote, FCA argues that Plaintiffs who leased their vehicles cannot recover
"lost resale value damages."  MTD at 9 n.6.  While Plaintiffs who leased admittedly

27 cannot resell their vehicles, they nevertheless allege that they overpaid for the lease
payments for their vehicles.  Lease payments are in part calculated by the estimated

28 residual vehicle value.  The diminished vehicle values therefore still impact Plaintiffs'
economic losses.

1   experienced a problem with the braking system.  *Id.* at 967-68.  And, in *Briehl v.*

2   *General Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999), the court upheld the

3   dismissal of a complaint where the plaintiffs never experienced the alleged defect with

4   the vehicles' brakes.  The theoretical defects in *Lee* and *Briehl* are easily

5   distinguishable from this case where, not only did Plaintiffs allege a safety defect that

6   has resulted in at least fourteen deaths and many more serious injuries, but Plaintiffs

7   have all experienced manifestations of the Defect.[10]

8   **C.    Dismissal of New York Plaintiff Pastarnack's Claims Is Not Warranted**
        **Under Rule 12(b)(2) Because the Court Can and Should Retain Pendent**
9       **Personal Jurisdiction Over Such Claims**

10          FCA does not dispute (nor could it) that this Court has personal jurisdiction over

11   FCA as to all claims asserted by the California Plaintiffs in this Action (Plaintiffs

12   Wimley and De Leon).  But FCA maintains that the Court lacks personal jurisdiction

13   over FCA for claims asserted by out-of-state Plaintiffs – namely New York Plaintiff

14   Pastarnack.  *See* MTD at 10-12.  Actually, the Court can and should maintain *pendent*

15   *personal jurisdiction* over the claims asserted by Plaintiff Pastarnack because his

16   claims arise out of the same nucleus of facts as the California Plaintiffs' claims.

17          Under the doctrine of pendent personal jurisdiction, "a defendant may be

18   required to defend a claim for which there is no independent basis of personal

19   jurisdiction so long as it arises out of a common nucleus of operative facts with a

20   claim in the same suit over which the court does have personal jurisdiction."  *CE*

21   *Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1113 (9th Cir. 2004).  "When a

22   defendant must appear in a forum to defend against one claim, it is often reasonable to

23   compel that defendant to answer other claims in the same suit arising out of a common

24   nucleus of operative facts."  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368

25   F.3d 1174, 1181 (9th Cir. 2004); *see also CollegeSource, Inc. v. AcademyOne, Inc.*,

26

27          [10] Plaintiffs also allege their concern that they will fall victim to carbon monoxide
     poisoning as have many others.  "An injury-in-fact may simply be the fear or anxiety
28   of future harm."  *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1163.

653 F.3d 1066, 1076 (9th Cir. 2011) (exercising pendent jurisdiction over the balance of plaintiff's claims, which arise out of a common nucleus of operative facts); *CE Distrib., LLC*, 380 F.3d at 1114 (noting that for purposes of pendent jurisdiction, only a "loose factual connection between the claims" is necessary). "Whether to exercise pendent personal jurisdiction is committed to the sound discretion of the district court." *CE Distrib., LLC*, 380 F.3d at 1113; *see also Action Embroidery Corp.*, 368 F.3d at 1181. Such a decision relies on "considerations of judicial economy, convenience and fairness to litigants." *Action Embroidery Corp.*, 368 F.3d at 1181.

Even FCA must recognize that Plaintiff Pasternack alleges substantially similar facts and legal theories as do the California Plaintiffs. Notably, each Plaintiff challenges FCA's failure to disclose material facts in pre-sale marketing materials about the lack of Auto-Off in Affected Vehicles and the related safety risks of carbon monoxide poisoning. Plaintiff Pastarnack's claims thus arise out of the same common nucleus of operative facts as the California Plaintiffs' claims. The district court reached much the same determination in *Allen v. Similasan Corp.*, 2013 WL 2120825, at *3 (S.D. Cal. May 14, 2013) (retaining pendent personal jurisdiction over Florida plaintiff's deceptive marketing claims arising out of a common nucleus of operative facts giving rise to the California plaintiff's claims).

The case of *Cahen v. Toyota Motor Corp.*, 2015 WL 7566806 (N.D. Cal. Nov. 25, 2015) provides no support for FCA. In that case, no California plaintiff asserted any claim against defendant Ford, so there was no personal jurisdiction over Ford in the first place. *See id.* at *3. Here, by contrast, the Court already has *personal* jurisdiction over FCA based on the claims asserted by the California Plaintiffs; *pendent* jurisdiction follows from that.

Surely the interests of judicial economy, fairness, and convenience are best served by hearing all of Plaintiffs' claims together – there would be little point to requiring the parties to litigate separately in this forum and again in a New York forum over the same underlying issues. Moreover, FCA suffers no prejudice from hearing

1    the claims together in this forum. Therefore, this Court should retain jurisdiction over

2    Plaintiff Pastarnack's claims.

3    **D.      Dismissal Is Not Warranted Under Rule 12(b)(6)**

4          **1.      Plaintiffs adequately plead facts supporting reliance and causation.**

5          The reliance and causation elements of Plaintiffs' omission claims are easily

6    satisfied where, as here, the plaintiffs allege that they would not have purchased the

7    products in question or paid as much for them had plaintiffs known the omitted facts.

8    *See Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (plaintiff

9    "undoubtedly satisfied this individual reliance requirement, as he alleged that he

10   would not have been willing to pay as much as he did for [the product], if anything, if

11   he had not been misled…."); *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104,

12   n.5 (9th Cir. 2013) ("Pleading that one would not have otherwise purchased the

13   product but for the misleading advertising also satisfies the consumer's obligation to

14   plead a causal link between the advertising and the alleged economic injury."), *as*

15   *amended on denial of reh'g and reh'g en banc* (July 8, 2013); *Falk v. Gen. Motors*

16   *Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007).  Indeed, Plaintiffs allege that

17   they were not aware when they purchased or leased the Affected Vehicles that the

18   vehicles lacked Auto-Off and posed a severe safety risk.  ¶¶ 41, 47, 51, 56, 62, 65, 86,

19   92, 96.  Plaintiffs further allege that reasonable consumers would expect or assume

20   that, after removing the Fob for a sufficient distance or period of time from an

21   Affected Vehicle, the engine would shut off.  ¶¶ 3-6, 12-16.  Further still, Plaintiffs

22   allege that if they had known about the lack of Auto-Off and its safety risks, Plaintiffs

23   would not have purchased or leased the Affected Vehicles or paid as much for them.

24   ¶¶ 36, 53, 68.  In this way, Plaintiffs sufficiently allege reliance and causation.

25         Beyond this, the reliance/causation requirements "may be established by

26   *materiality*."  *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 530 (C.D. Cal.

27   2012) (emphasis added); *see also Tait v. BSH Home Appliances Corp.*, 289 F.R.D.

28   466, 480 (C.D. Cal. 2012); *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1163.

An unreasonable safety defect is *material* to a reasonable person.  *See Unintended Acceleration MDL*, 754 F. Supp. 2d at 1169; *see also Falk*, 496 F. Supp. 2d at 1096; *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *13 (C.D. Cal. Oct. 3, 2014) ("[A] known safety hazard in a vehicle is a material fact that the manufacturer is obligated to disclose."); *Kearney v. Hyundai Motor Am.*, 2010 WL 8251077, at *7 (C.D. Cal. Dec. 17, 2010).  Once Plaintiffs sufficiently and plausibly plead an unreasonable safety defect, economic loss readily flows from it.  *See In re Toyota*, 790 F. Supp. 2d at 1163.  In this case, Plaintiffs set forth specific factual allegations about FCA's Keyless Fob system, the premium pricing, the lack of Auto-Off, the nature of the unreasonable safety risks posed by FCA's design (above and beyond vehicles with traditional keys or other designs), and the actual and threatened harms resulting from the lack of Auto-Off in such a system.  As alleged, the Defect was material to Plaintiffs' purchasing decisions.

In any event, "[w]hether an omission is material is a fact-intensive question…." *Keegan*, 284 F.R.D. at 531.  "[T]he materiality of a misrepresentation is typically an issue of fact, and therefore should not be decided at the motion to dismiss stage." *Hinojos*, 718 F.3d at 1107.  To be sure, Plaintiffs sufficiently allege a safety Defect, which would be material to a reasonable consumer and thus cause economic harm.  But if materiality of the Defect were an issue at all, it would be an issue of fact that should not be decided at the motion to dismiss stage.

According to FCA, each Plaintiff failed to turn off his or her vehicle using the Start/Stop button, and this conduct constitutes an "intervening act" showing that the challenged omissions did not cause injury.  MTD at 13-14.  FCA is wrong.  Plaintiffs allege that FCA's omissions caused their economic injuries at the point of purchase (not personal injuries from carbon monoxide poisoning) – the materiality of the Defect confirms this.  Reliance/causation arose *before* Plaintiffs drove their vehicles and experienced the Defect.  Furthermore, "for an intervening act properly to be considered a superseding cause, the act must have produced harm of a kind and degree

so far beyond the risk the original tortfeasor should have foreseen that the law deems it unfair to hold him responsible." *Kelly v. Echols*, 2008 WL 4163221, at *9 (E.D. Cal. Sept. 4, 2008); *see also Klein v. National R.R. Passenger Corp.*, 1988 WL 108481, at *3 (S.D.N.Y. Oct. 7, 1988).  Any failure by Plaintiffs to turn off their Affected Vehicles is precisely the sort of circumstance that FCA reasonably should have foreseen when it designed, implemented, and sold those cars with Keyless Fob systems.

At the pleadings stage, Plaintiffs sufficiently allege that a material safety defect caused economic harm.

### 2.    The Complaint complies with Rule 9(b).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake…. [K]nowledge … may be alleged generally."  Fed. R. Civ. P. 9(b).  Omissions need not be pled with the same degree of specificity.  *See Falk.,* 496 F. Supp. 2d at 1098-99; *see also Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1159-60 (C.D. Cal. 2011); *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013).  "All that is necessary is identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  *Keegan*, 838 F. Supp. 2d at 938.

In this case, Plaintiffs aver *the who* (FCA), *the what* (the Keyless Fob system design of the Affected Vehicles lacks Auto-Off and poses a serious risk of carbon monoxide poisoning), *the when* (beginning at the time the Affected Vehicles were introduced to market and continuing through the time of sale or lease of each vehicle), *the where* (pre-sale marketing materials), *the how* (failure to disclose the alleged safety defect known to FCA, which induced consumer purchases or leases of Affected Vehicles), and *the why* (FCA had exclusive/superior knowledge of material information about a safety defect, yet failed to disclose the Defect in order to induce Plaintiffs and Class Members to pay a higher price to purchase or lease its Affected

1   Vehicles rather than competitors' vehicles or vehicles with physical keys).  *See, e.g.*,

2   ¶ 182.  The Complaint further alleges that FCA was under a duty to disclose the

3   Defect, but failed to do so.  *See* ¶¶ 181-82, 185, 208-10, 234-35.

4        FCA imagines that they do not know "who" is charged with omitting material

5   facts about the Defect.  MTD at 14-15.  To be clear:  *FCA* omitted the material facts.

6   At this juncture, Plaintiffs need not identify particular employees responsible for

7   FCA's failure to disclose.  *See Herremans*, 2014 WL 5017843, at *10 ("The court

8   concludes that Herremans has pled her fraudulent omission/concealment claims with

9   sufficient particularity under Rule 9(b).  Herremans pleads 'who' engaged in

10   concealment (BMW)."); *see also Asghari*, 42 F. Supp. 3d at 1326-27.  FCA cites

11   *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009), but to no avail.  In

12   that case, the plaintiff asserted a misrepresentation claim based on what he was

13   affirmatively told about his vehicle, so the plaintiff needed to identify who in

14   particular made the allegedly false statement.  Here, the claims are based on what *FCA*

15   *failed to tell* Plaintiffs, so there is no particular employee to identify.

16        FCA also protests that the Complaint does not specify when FCA knew of the

17   Defect or was exposed to fraudulent omissions.  MTD at 15.  Actually, the Complaint

18   does specify that FCA knew of the Defect and failed to disclose it at least through the

19   time of the sale of each Affected Vehicle.  *See* ¶ 182.  The Complaint further pleads

20   facts about the timing and sources of FCA's knowledge.  *Id.*  Rule 9(b), however, does

21   not require that Plaintiffs plead the specific time or place of an omission.  *See Falk*,

22   496 F. Supp. 2d at 1099; *see also Unintended Acceleration MDL*, 754 F. Supp. 2d at

23   1189.  Plaintiffs meet their burden by identifying where the omitted information

24   should or could have been revealed as well as providing representative samples of pre-

25   sale marketing materials that failed to include the omitted information.  This they have

26   done:  Plaintiffs identify and attach examples of FCA's pre-sale marketing materials

27   (*e.g.*, sales brochures) where the Defect could have been disclosed but was not.  *See*

28   ¶¶ 46-48, 60-62, 91-93, Exs. 4-6.

FCA also maintains that it does not know "what" should have been disclosed. MTD at 15.  Once again, the Complaint is clear that FCA should have disclosed that its Keyless Fob system design of the Affected Vehicles lacks Auto-Off and that this, in turn, poses a serious risk of carbon monoxide poisoning.  The fact that a driver can stop a running engine by pressing the Start/Stop button says nothing about whether or not the vehicle has Auto-Off.  And the fact that carbon monoxide is dangerous in enclosed spaces does not inform consumers that a Keyless Fob vehicle without Auto-Off poses an increased risk of carbon monoxide poisoning.

Thus, Plaintiffs plead the circumstances of the omission with specificity such that FCA's Rule 9(b) challenge is without merit.

### 3. Plaintiffs sufficiently allege that FCA omitted material facts and breached its duty to disclose a safety defect.

In a nondisclosure case like this one, the plaintiff can state a claim under California law when the defendant has a duty to disclose an alleged defect.  *See Falk*, 496 F. Supp. 2d at 1094-95.[11]  An auto manufacturer generally has a duty to disclose a safety defect.  *See Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 836 (2006); *see also Keegan*, 838 F. Supp. 2d at 941.  Moreover, a duty to disclose arises in any of the following circumstances:  "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact[s]."  *Falk*, 496 F. Supp. 2d at 1095.[12]  Here, Plaintiffs allege that the Defect poses a deadly safety hazard, that FCA was in a superior position to know of the Defect, and that the Defect was unknown to

---

[11] Plaintiffs assert claims based on FCA's actionable failure to disclose a material safety defect, rather than affirmative misrepresentations.

[12] *Cf. State v. Gen. Motors Corp.*, 466 N.Y.S.2d 124, 127 (Sup. Ct. 1983) (finding GM had duty to disclose transmission defect:  "If one party has superior knowledge or has a means of knowledge not available to both parties, then he is under a legal obligation to speak and silence would constitute fraud.").

Plaintiffs when they purchased or leased the Affected Vehicles.

### a. FCA has a duty to disclose the Defect because there are safety concerns associated with use of the Affected Vehicles.

"[T]he Ninth Circuit has recognized that California law imposes on manufacturers a general duty to disclose defects in their products relating to safety issues." *Willis v. Buffalo Pumps, Inc.*, 34 F. Supp. 3d 1117, 1132 (S.D. Cal. 2014).  In particular, Defendants are "under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use." *Keegan*, 838 F. Supp. 2d at 941; *see also Kearney*, 2010 WL 8251077, at *6-7; *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010); *Falk*, 496 F. Supp. 2d at 1094.  So when a plaintiff alleges a safety defect, he or she sufficiently pleads a duty to disclose.  *See Asghari*, 42 F. Supp. 3d at 1330-31; *see also Keegan*, 838 F. Supp. 2d at 944; *Kearney*, 2010 WL 8251077, at *6-7; *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784, at *6 (C.D. Cal. May 4, 2009).  At the same time, "the average consumer would expect the manufacturer to guarantee against unreasonable safety risks." *Decker v. Mazda Motor of Am., Inc.*, 2011 WL 5101705, at *4 (C.D. Cal. Oct. 24, 2011); *see also Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at *7 (C.D. Cal. Nov. 8, 2013) (same).

In this case, Plaintiffs allege that FCA failed to disclose a safety defect in the design of its Keyless Fob system.  According to the Complaint, FCA adopted a Keyless Fob system that lacks the adequate safeguard of an automatic engine shutoff to ensure that the vehicle's engine does not continue to run unabated, emitting deadly carbon monoxide (*i.e.*, the "Defect").  ¶¶ 12-15.  The Affected Vehicles have a propensity to cause carbon monoxide poisoning, creating an undue risk of injury and death.  ¶ 115.  The Defect exists because, without Auto-Off, the Affected Vehicle can emit dangerous levels of carbon monoxide.  ¶ 128.  Affected Vehicles allow colorless and odorless carbon monoxide – the silent killer – to be emitted continually and unabated after the car is parked and the driver exits the vehicle.  ¶ 28.  Those

continuous noxious carbon monoxide emissions accumulate, especially in enclosed environments, and are dangerous and potentially fatal.  *Id.*  Since FCA has "a duty to disclose facts concerning safety issues" (*Kearney*, 2010 WL 8251077, at *6), and since the alleged safety issues are certainly material to a reasonable consumer, Plaintiffs sufficiently plead that FCA had a duty to disclose the Defect.

### b. FCA has a duty to disclose the Defect based on its superior knowledge about the Defect and related safety issues.

A defendant is obligated to disclose information when it has exclusive knowledge of material facts not known to the plaintiffs, namely, when the defendant is in a superior position to know of the relevant facts.  *See, e.g.*, *Falk*, 496 F. Supp. 2d at 1094-95; *see also Marsikian*, 2009 WL 8379784, at *6.  The "exclusive knowledge" standard is not construed literally or rigidly.  *See Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 583 (E.D. Cal. 2012).  Rather, exclusivity is analyzed in part by examining whether the defendant had 'superior' knowledge.[13]  And the district courts in *In re MyFord Touch Consumer Litig.*, *Elias v. Hewlett-Packard Co.*, *Falk*, and *Marsikian* all have said the same.[14]

Here, Plaintiffs allege that FCA has a duty to disclose the Defect based on its exclusive knowledge thereof.  ¶¶ 181-82, 208, 233-35.  In other words, FCA is in a superior position to know about the lack of Auto-Off and related safety issues.  FCA's knowledge arises at least through:  (1) certain news reports of injuries and deaths from Keyless Fob vehicles that lack Auto-Off (¶¶ 132-36); (2) recalls of similar Keyless Fob vehicles that lack an Auto-Off mechanism (¶¶ 137-40); (3) patent applications covering Auto-Off systems (¶¶ 141-46); (4) personal injury lawsuit filings for Keyless Fob vehicles that lack an Auto-Off mechanism (¶¶ 147-53); (5) consumer complaints

---

[13] *Id*. ("Since Defendant was in a ***superior position*** to know of its defective engines, Plaintiffs properly allege that Defendant had exclusive knowledge of material facts not known to Plaintiffs.") (emphasis added).

[14] *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014); *Elias v. Hewlett-Packard Co.* ("*Elias II*"), 2014 WL 493034, at *9 (N.D. Cal. Feb. 5, 2014); *Falk*, 496 F. Supp. 2d at 1096-97; *Marsikian*, 2009 WL 8379784, at *6.

---

filed with NHTSA regarding Keyless Fob vehicles (¶¶ 154-55); (6) review of non-binding NHTSA suggestions (¶¶ 156-60); and (7) FCA's partial implementation of Auto-Off in remote-start applications (¶¶ 173-79).[15]

To the extent FCA contends that Plaintiffs knew about the lack of Auto-Off (MTD at 17), the contention is baseless. As discussed above, Plaintiffs allege that they were unaware of the lack of Auto-Off, that they were unaware of the increased safety risks associated with FCA's Keyless Fob system, and that reasonable consumers assume the engines of Affected Vehicles will shut off after the Fob is removed for a sufficient distance or period of time. While FCA may urge otherwise, Plaintiffs sufficiently aver that they and other Class Members were not in a reasonable position to discover this safety Defect until after they purchased or leased the Affected Vehicles. *See* ¶ 187.

Despite FCA's contrary view, sporadic information in the public domain about the dangers of Keyless Fob vehicles does not cancel out FCA's superior knowledge. *See Asghari*, 42 F. Supp. 3d at 1327 n.74 ("Many customers would not have performed an internet search before beginning a [product] search. Nor were they required to do so."); *see also Falk*, 496 F. Supp. 2d at 1096 (same); *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1192 ("While prospective customers could have been tipped off to the possibility of [sudden unintended acceleration] by researching past complaints filed with NHTSA, many customers would not have performed such a search, nor would they be expected to."); *Elias II*, 2014 WL 493034, at *9 ("customers cannot be expected to seek facts which they h[ave] no way of knowing exist []"). "Plaintiffs have sufficiently alleged that [defendant] knew significantly more about the alleged [] defect than the limited information" available to the public. *See Unintended Acceleration MDL*, 754 F. Supp. 2d at 1192; *see also In re MyFord Touch Consumer*

---

[15] Since at least 2011, FCA had knowledge of the need for Auto-Off and worked on Auto-Off technology internally with remote-start vehicles to limit carbon monoxide emissions in pre-start situations. Yet FCA opted not to implement Auto-Off in its Keyless Fob systems for the Affected Vehicles. ¶¶ 176-79.

1     *Litig.*, 46 F. Supp. 3d at 960 ("Even if the public – and therefore Plaintiffs – were

2     aware of some problems with [the in-vehicle-dash control systems], that does not

3     establish that either the public or Plaintiffs knew or should have known of the severity

4     of the problems…."); *Hofmann v. Fifth Generation, Inc.*, 2015 WL 5440330, at \*8-9

5     (S.D. Cal. Mar. 18, 2015) (information from a magazine article cannot be imputed to

6     consumers. At most, the nature of information in the public domain "is a question of

7     fact not properly resolved on a motion to dismiss." *In re Adobe Sys., Inc. Privacy*

8     *Litig.*, 66 F. Supp. 3d 1197, 1230 (N.D. Cal. 2014).[16]

9         In sum, prospective purchasers of the Affected Vehicles were not expected to

10     research internet reports, NHTSA complaints, NHTSA proposals, product recalls,

11     personal injury lawsuits, or patent applications. These customers could not be

12     expected to seek out facts about a dangerous Keyless Fob design of which they were

13     unaware. And even if Plaintiffs had learned something about the safety defect prior to

14     purchase or lease (they did not), Plaintiffs sufficiently allege that FCA knew

15     significantly more about it. Plaintiffs, therefore, adequately plead that FCA was in a

16     superior position to know of the Defect and its associated safety risks.

17     **E.    Plaintiffs' Unjust Enrichment Claims Are Properly Pled in the Alternative**

18         FCA's argument that Plaintiffs' claims for unjust enrichment must fail ignores

19     binding Ninth Circuit precedent and misconstrues Plaintiffs' allegations.

20         *First*, Plaintiffs allege sufficient facts to establish that FCA was unjustly

21     benefited. Plaintiffs expressly allege that: (1) they purchased or leased vehicles

22     manufactured by FCA; (2) they overpaid for those vehicles because FCA failed to

23     disclose that the vehicles lacked Auto-Off; and (3) it would be inequitable and unjust

24

25         [16] FCA cites *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703 (C.D. Cal.

26     Jan. 23, 2012), wherein the parties disputed a Prius' fuel economy. There, the Court
    recognized that the Prius' fuel economy was readily observable under daily driving

27     conditions, and the topic was given national attention by the mainstream media. *See*
    *id.* at \*8-9. By contrast, the Defect here is not readily observable in everyday driving

28     conditions. Furthermore, despite sporadic reports over the years, FCA's Keyless Fob
    design has not been given national attention by the mainstream media.

to permit FCA to retain those wrongfully gained profits.  *See, e.g.*, ¶¶ 39, 259-60.  As a matter of common sense, FCA necessarily benefits when it sells cars to dealers for resale or lease.  At any rate, none of the cases relied upon by FCA hold that, merely because Plaintiffs purchased or leased vehicles from intermediary dealerships, FCA could not have benefited as a matter of law.  *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 127-28 (D. Conn. 2014) (applying "liberal construction of the pleadings doctrine" on motion to dismiss and concluding that plaintiffs had pled sufficient facts for unjust enrichment claim); *Hernandez v. Lopez*, 180 Cal. App. 4th 932, 938 (2009) (ordering new trial where trial court erred by not applying equitable doctrine of unjust enrichment since defendant may have unjustly retained benefits); *Litman, Asche & Gioiella, LLP v. Chubb Custom Ins. Co.*, 373 F. Supp. 2d 314, 318 (S.D.N.Y. 2005) (only dismissing unjust enrichment claim after finding no evidence that defendant actually benefited on motion for summary judgment).

*Second*, the Ninth Circuit recently held that a claim for unjust enrichment under California law should not be dismissed just because it is not a "standalone cause of action."  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  The court's "unambiguous" decision in *Astiana* has "settled the long-standing question of whether a court may dismiss a claim for unjust enrichment as merely duplicative of other statutory or tort claims."  *Trazo v. Nestlé USA, Inc.*, 113 F. Supp. 3d 1047, 1049 (N.D. Cal. 2015).  Even if Plaintiffs may ultimately have an adequate remedy at law, it is premature to dismiss the unjust enrichment claim at this stage of the litigation, and Plaintiffs can plead unjust enrichment in the alternative.  *See Vicuña v. Alexia Foods, Inc.*, 2012 WL 1497507, at *3 (N.D. Cal. Apr. 27, 2012) (concluding that even though unjust enrichment only applies in absence of adequate remedy at law, parties may assert inconsistent theories of recovery at pleading stage); *see also* Fed. R. Civ. P. 8(d)(3).  FCA incorrectly relies on two non-precedential decisions and an outdated case to support its arguments that a claim for unjust enrichment must be dismissed at the pleading stage.  *See In re Sony PS3 "Other OS" Litig.*, 551 F. App'x 916, 923 (9th

Cir. 2014) (decided before *Astiana*); *Smith v. Ford Motor Co.*, 462 F. App'x 660, 665 (9th Cir. 2011) (same); *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1093-94 (9th Cir. 2003) (same).

Finally, while the relationship between the parties for an unjust enrichment claim under New York law must not be too "attenuated," MTD at 21, recent federal district court decisions have allowed unjust enrichment claims to proceed against the manufacturer of the defective product. *See, e.g.*, *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 403-04 (E.D.N.Y. 2010) (applying New York law to conclude that "indirect purchaser can assert such an unjust enrichment claim against the manufacturer" of defective food product); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013) (where plaintiff purchased defective product from intermediate retailer, court nevertheless allowed unjust enrichment claim against manufacturer to proceed). FCA's citation to *Cohen v. BMW Investments L.P.*, 2015 WL 6619958, at *7 (S.D.N.Y. Oct. 30, 2015), is inapposite since, unlike here, there were "no facts in [that] complaint indicating that [the parties] even knew of each other's existence" prior to the litigation.

## F.  Plaintiffs' Implied Warranty Claims Should Be Allowed to Proceed

FCA incorrectly argues that Plaintiffs' claims for breach of the implied warranty must be dismissed under New York law. *First*, New York law does not unequivocally require privity for implied warranty claims. New York recognizes an exception to its general rule requiring privity for implied warranty claims when the product at issue is a "thing[] of danger." *See Goldberg v. Kollsman Instrument Corp.*, 12 N.Y.2d 432, 436 (1963). "[W]here an article is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for breach of law-implied warranties, to the persons whose use is contemplated." *Id.* at 436-37. For example, in *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011), the court applied New York law to hold that the plaintiffs had pled sufficient

facts that the vehicles were dangerous because the vehicles could suddenly lose the ability to speed/accelerate, and therefore, there was no requirement of privity. The court in *Hubbard v. General Motors Corp.*, 1996 WL 274018 (S.D.N.Y. May 22, 1996), came to the same conclusion where the plaintiffs alleged a defective braking system such that privity was not required for the implied warranty claim. And because Plaintiffs allege throughout the Complaint that the lack of Auto-Off presents deadly risks of carbon monoxide poisoning, the Affected Vehicles certainly qualify as "things of danger." *See Goldberg*, 12 N.Y.2d at 436-37.

Second, under New York law, "[a] product must be fit for the ordinary purposes for which such goods are used to be considered merchantable under New York's version of the Uniform Commercial Code." *Derienzo v. Trek Bicycle Corp.*, 376 F. Supp. 2d 537, 570 (S.D.N.Y. 2005). As a result, "liability for breach of warranty depends on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." *Id.* Avehicle is not necessarily fit for its ordinary purposes "merely because [it] provides transportation from point A to point B." *Keegan*, 838 F. Supp. 2d at 946.

Whether a vehicle is fit for its ordinary purposes is a factual determination inappropriate for this stage of the litigation. Because the Court "must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party," *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 950, it is premature to dismiss Plaintiffs' implied warranty claims. Plaintiffs allege that the Affected Vehicles present deadly risks of carbon monoxide poisoning without Auto-Off, and any determination as to whether vehicles with a life-threatening defect violate the implied warranty must be left to a trier of fact.

### G.   Plaintiffs' Request for Injunctive Relief Is Not Barred by Preemption or Primary Jurisdiction

FCA's argument – that Plaintiffs' request for injunctive relief is barred by preemption and primary jurisdiction – ignores the weight of federal authority rejecting

the same argument.  Notably, FCA fails to mention the *Unintended Acceleration MDL*, another vehicle defect class action decided in this district.  There, the Court rejected the argument that claims for injunctive relief, including a recall, must be dismissed by application of preemption or the primary jurisdiction doctrine.  FCA also neglects to mention *Chamberlan*, 314 F. Supp. 2d 953 (N.D. Cal. 2004), where the court refused to dismiss plaintiffs' requested injunctive relief.  FCA's argument here should be rejected for the same reasons articulated by those courts.

*First*, FCA argues that Plaintiffs' requested relief is preempted by the Safety Act.  That is incorrect.  Conflict preemption only exists when "state law conflicts with federal law, either … because it is impossible to comply with both laws or … because state law stands as an obstacle to accomplishing the purposes of federal law." *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1195.  California federal courts have consistently held that motor vehicle safety "is an area of law traditionally regulated by the states," and that the presumption against preemption therefore applies to vehicle defect class actions.  *See id.* at 1196; *Chamberlan*, 314 F. Supp. 2d at 958 ("Motor vehicle safety is an area of traditional State police power.").

Because there is a presumption against preemption in this case, FCA "bears the burden of showing that it was Congress' clear and manifest intent to preempt State law." *Id.* at 1197.  As such, FCA must show that there is an "actual conflict" between Plaintiffs' requested relief and the Safety Act.  It is not enough that the relief sought "might conflict with some future action of NHTSA as it investigates the alleged defects at issue." *Unintended Acceleration MDL* at 1198-1200.  "[T]o constitute an actual conflict, the state law at issue must conflict with the intent of Congress in a specific and concrete way." *Id.* at 1198.

NHTSA recognized over four years ago that there are "clear safety problem[s]" resulting from Keyless Fobs, particularly because they operate differently than traditional physical keys.  But NHTSA has not enacted any regulation addressing this safety problem. *See* 76 Fed. Reg. 77183-84, 77195 (Dec. 12, 2011).  In December

2011, NHTSA considered requiring a one-second 85-decibel alert that would sound when a driver removes the Fob from a running vehicle, but questioned whether one second was long enough and whether voice alerts would be more effective.  *Id.* at 77192-93.  NHTSA proposed amending Federal Motor Vehicle Safety Standard ("FMVSS") 114 to require the alert, and requested comments by March 12, 2012.[17] NHTSA cautioned, however, that it did "not intend that this [potential] rule preempt state tort law that would effectively impose a higher standard on motor vehicle manufacturers."  *Id.* at 77197.

In the *Unintended Acceleration MDL*, Judge Selna rejected the same conflict preemption argument advanced by FCA here.  Judge Selna emphasized that "a real and substantial possibility of conflict is insufficient to warrant dismissal on preemption grounds."  754 F. Supp. 2d at 1198.  And tellingly, the *Chamberlan* court also rejected this argument, concluding that the automaker had failed to overcome the presumption against preemption without evidence of an "actual conflict."  314 F. Supp. 2d at 967.  So too here.  FCA has failed to bear its burden to establish that Plaintiffs' requested injunctive relief actually conflicts with the Safety Act.

FCA's reliance on *In re Bridgestone/Firestone, Inc., ATX, ATX II & Wilderness Tires Prods. Liab. Litig.* ("*Bridgestone*"), 153 F. Supp. 2d 935 (S.D. Ind. 2001), and the more than ten-year-old unpublished decisions in *Cox House Moving, Inc. v. Ford Motor Co.*, 2006 WL 2303182 (D.S.C. 2006), and *Lilly v. Ford Motor Co.*, 2002 WL 84603 (N.D. Ill. Jan. 22, 2002), is unavailing.  In the *Unintended Acceleration MDL*, Judge Selna criticized those same courts for their overly broad application of conflict preemption, explaining that those courts erred by failing to apply the presumption against preemption.  754 F. Supp. 2d at 1196, 1199.  The district court in *Chamberlan*

---

[17] FCA argues that NHTSA rejected Auto-Off.  Not true.  NHTSA considered Auto-Off and recognized that some manufacturers had already installed it, but acknowledged that it was unable to decide how long to allow the engine to run after the Fob is removed before the engine shuts off.  *Id.* at 77194-95.  Plainly, NHTSA did not reject Auto-Off and instead requested comment.

similarly criticized the reasoning of *Bridgestone* and *Lilly*.  314 F. Supp. 2d at 964-65, 967.  The decisions FCA cites remain as unavailing now as when they were rejected by other California federal courts.

*Second*, in the *Unintended Acceleration MDL*, Judge Selna rejected the same primary jurisdiction argument advanced by FCA here, concluding that the claims (much like Plaintiffs' claims) did "not arise under the Safety Act or NHTSA regulations" and were instead "based on California statutes … and general contract and tort principles." *Id.* at 1200.[18]  The claims were therefore "within the conventional competence of the courts." *Id.*  Plaintiffs here do not challenge any NHTSA regulation, and despite FCA's argument about the "uniformity" of NHTSA schemes, MTD at 25, NHTSA emphasized in December 2011 that its potential alert requirement for Keyless Fob-equipped vehicles was "only a minimum safety standard." *See* 76 Fed. Reg. at 77197.

FCA's citation to *Astiana*, a case concerning an agency interpretation of complicated cosmetic product labels, is inapposite.  There, multiple district courts had invoked primary jurisdiction only because "[d]etermining what chemical compounds may be advertised as natural on cosmetic product labels is a particularly complicated issue that Congress ha[d] committed to the FDA." *Id.* at 761.  *Astiana* is therefore easily distinguishable from this case where Plaintiffs do not bring claims under, or challenge any, NHTSA regulation, and the core claim – that Plaintiffs are entitled to recover economic and injunctive relief for FCA's failure to disclose the Defect – is not the type of "unusual technical or policy expertise" requiring agency intervention. *See Guido v. L'Oreal, USA, Inc.*, 2013 WL 454861, at *6 (C.D. Cal. Feb. 6, 2013).

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court deny FCA's Motion to Dismiss.

---

[18]  The court explained that the doctrine of primary jurisdiction is only appropriate "where enforcement of the claim requires the resolution of issues, which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1199.

1   Dated:  April 18, 2016                    HAGENS BERMAN SOBOL SHAPIRO LLP

2

3                                             By /s/ Steve W. Berman
                                              Steve W. Berman (*pro hac vice*)
4                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                              1918 Eighth Avenue, Suite 3300
5                                             Seattle, WA 98101
                                              Telephone: (206) 623-7292
6                                             Facsimile: (206) 623-0594
                                              steve@hbsslaw.com

7                                             Lee M. Gordon (SBN 174168)
                                              Elaine T. Byszewski (SBN 222304)
8                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                              301 N. Lake Avenue, Suite 203
9                                             Pasadena, CA 91101
                                              Telephone: (213) 330-7150
10                                            Facsimile: (213) 330-7152
                                              lee@hbsslaw.com
11                                            elaine@hbsslaw.com

12                                            LABATON SUCHAROW LLP

13                                            Martis Ann Alex (SBN 77903)
                                              Daniel R. Leathers (*pro hac vice*)
14                                            Brian R. Morrison (*pro hac vice*)
                                              LABATON SUCHAROW LLP
15                                            140 Broadway
                                              New York, NY 10005
16                                            Telephone: (212) 907-0700
                                              Facsimile: (212) 818-0477
17                                            malex@labaton.com
                                              dleathers@labaton.com
18                                            bmorrison@labaton.com

19                                            *Attorneys for Plaintiffs*

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2016, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

*/s/ Steve W. Berman*
STEVE W. BERMAN